UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRENCE HENDERSON,

                Petitioner,                Case No. 07-14712

v                                     Honorable Thomas L. Ludington

THOMAS BELL,

                Respondent.

_____/

**ORDER DENYING PETITIONER'S PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

A jury trial was conducted in Wayne County Circuit Court on June 11 and 12 of 2003 to address two charges brought against Petitioner Terrence Henderson. During the trial, Jessie Young testified that while she was sitting in her car at a gas station on February 6, 2003, Henderson placed a knife to her throat, grabbed her car keys, and stole her car. Young identified Henderson as her assailant at trial and in an earlier photographic lineup. Sergeant Merony of the Michigan State University Police Department testified that he stopped Henderson because he was speeding. At that time, Henderson acknowledged that the vehicle was Ms. Young's. After Sergeant Merony confirmed the vehicle was reported stolen, he arrested Henderson. A search of Ms. Young's car produced a steak knife between the front passenger seat and the center console. The jury convicted Henderson, finding him guilty of carjacking and armed robbery.

More than eleven years after Henderson's jury trial, he advances four claims of error. This Court originally dismissed the four claims, finding them procedurally defaulted because Henderson did not seek review of the issues in the Michigan Court of Appeals within the one-

year time period Michigan law requires.  The Sixth Circuit reversed and remanded the claims, finding that Henderson tendered his appeal papers to prison officials on November 30, 2006— five days before the deadline.  The Sixth Circuit found cause to excuse Henderson's procedural default because "[a]s a result of failings by the prison's mail system, Henderson's packet did not arrive [at the Michigan Court of Appeals] until one day after the deadline."  Op. & Order at 4.[1]

After reviewing the remanded claims, the Court concludes that Henderson is not entitled to relief.  Henderson's second, third, and fifth[2] claims of error are entitled to heightened AEDPA deference because the Michigan courts denied those claims on the merits, and Henderson has not demonstrated that the state courts' determinations were contrary to or an unreasonable application of federal law.  Moreover, Henderson is not entitled to relief on his first claim of error—ineffective assistance of appellate counsel—because appellate counsel was not ineffective for failing to raise meritless claims in the Michigan courts.  Accordingly, Henderson's habeas petition will be denied.

# I

The Michigan Court of Appeals summarized the facts leading to Henderson's convictions:

> The charges arose from an incident occurring at a gas station in the city of Detroit on February 6, 2003.  The victim entered the parking lot of the gas station, driving a red 2002 Chevy Cavalier, to use a pay phone from her car.  As the victim completed her phone call, defendant approached her car and placed a knife at her throat, demanding her car keys.  After a struggle by the victim to keep her keys, she exited the car through the passenger side and defendant drove off.  The victim then called 911 and gave a description of her car and the incident.  The victim testified that the knife had a serrated edge, and that it was held to the left side of her neck.  Furthermore she testified that defendant was wearing a black jacket,

---

[1]    In fairness to the prison officials, a grievance document relied upon by Henderson reflects that the prison officials actually gave Henderson's mailing expedited attention.  The delay—if it is fair to characterize it as such—is apparently not attributable to either Henderson or prison officials, but to the United States Post Office Service.

[2]    The Court will retain each claim's numerical designation asserted in Henderson's original petition for clarity.

dark pants, a black skull cap and the defendant's face was approximately one foot from her face during the attack, with nothing obscuring defendant's face. The following day, on February 7, 2003, defendant was stopped for speeding on the campus of Michigan State University (MSU), driving a red 2002 Chevy Cavalier. The officer ran the vehicle through the LEIN system and discovered the car to be stolen. Defendant was subsequently arrested and transported to the station. An inventory search of the car revealed a steak knife approximately 10 inches long with a black handle and a 4.5 inch blade. Defendant was subsequently transported back to Detroit where the victim gave a positive identification in a picture line-up, identifying defendant as her attacker.

*People v. Henderson*, 2005 WL 321004, at *1 (Mich. Ct. App. Feb. 10, 2005).

Following a jury trial in Wayne County Circuit Court, Henderson was convicted of carjacking and armed robbery. Henderson was sentenced as a fourth habitual offender to seventeen-to-fifty years in prison for the carjacking and armed robbery convictions, to be served concurrently.

## II

After he was convicted, Henderson embarked on an extensive appeals process challenging his conviction in both state and federal court. Henderson has presented an assortment of claims at various times in the appeals process, and in considering his current habeas petition it is important to understand when each claim was asserted. Therefore, in this section outlining the procedural history of Henderson's appeals, whenever the Court refers to a claim that is currently at issue in his § 2254 habeas petition, that claim will be bolded so that claim can be traced throughout his appeals process.

## A

Henderson filed an appeal of right in the Michigan Court of Appeals. He raised five claims: (1) his convictions for armed robbery and carjacking violated the Double Jeopardy Clause of the United States Constitution; (2) **his trial counsel was ineffective because he did not challenge the use of a photographic show up rather than an in-person show up**; (3) a

- 3 -

flight instruction was improperly given; (4) his right to testify in his own defense was violated; and (5) his sentence was disproportionate and reflected an abuse of discretion. ECF No. 14-7 at 11-12. The Michigan Court of Appeals affirmed his convictions. *Henderson*, 2005 WL 321004, at *5 (Mich. Ct. App. Feb. 10, 2005).

Henderson then attempted to file an application for leave to appeal to the Michigan Supreme Court, but the application was rejected for filing because it was not timely submitted. *See* Affidavit of Corbin R. Davis, Clerk Michigan Supreme Court, 6/26/08 ("I have searched the files and records of the Michigan Supreme Court and find that Michigan Court of Appeals Docket number 250156 was a late application (beyond 56 days) and rejected by this Court on April 8, 2005.").[3]

After denial of his direct appeal, Henderson filed a motion for relief from judgment in the trial court. *See People v. Henderson*, No. 03-cv-2508 (Wayne County Cir. Ct. Dec. 5, 2005). He raised the following claims in his motion: (1) **appellate counsel was ineffective because appellate counsel did not challenge trial counsel's failure to challenge the photographic lineup**; (2) **the prosecutor used false evidence**; and (3) **trial counsel was ineffective in failing to investigate the photographic show up**. The trial court denied the motion for relief from judgment. *Id*. Henderson subsequently filed a motion for reconsideration of that denial, which was also denied on February 13, 2006.[4]

---

[3]      The Michigan Supreme Court's decision is not in the record, so this Court is unable to determine which claims Henderson presented to it.

[4]      Neither Henderson's motion for reconsideration nor the denial is included in the record, and therefore it is not possible to see what claims Henderson presented. However, in Henderson's subsequent appeal of the denial of the motion for reconsideration, the Michigan Court of Appeals implies that the reconsideration was denied due to a procedural bar:  ECF No. 14, Ex. 8 at 36 ("The filing of the motion for reconsideration did not toll the time that appellant had to file his appeal since he failed to [file] the motion[for reconsideration] within 21 days of the entry of the December 5, 2005 order.").

Henderson filed an application for leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals.[5]  The application was dismissed because he did not file the application within the twelve-month limitations period.  *People v. Henderson*, No. 274818 (Mich. Ct. App. Dec. 28, 2006).  Henderson then filed an application for leave to appeal contending that: (1) the Michigan Court of Appeals incorrectly denied his appeal of the denial of his relief from judgment because it was untimely; (2) the denial of his relief from judgment was in error; (3) the denial of his relief from judgment did not rest on an independent and adequate state rule; (4) the trial court judge improperly failed to grant a *Ginther* hearing; and (5) **he was denied effective assistance of counsel when trial counsel failed to seek suppression of the photographic show up**. ECF No. 14, Ex. 8 at 11. The Michigan Supreme Court denied Henderson's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court."  *People v. Henderson*, No. 133182 (Mich. June 26, 2007).

**B**

After challenging his conviction in the Michigan state courts, Henderson filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in this Court on November 2, 2007.  Henderson asserted eight claims in his habeas petition: (1) **appellate counsel performed ineffectively by failing to raise the claims argued by Henderson in grounds 2 and 3 of his § 2254 petition**; (2) **the prosecution violated his rights by soliciting false evidence regarding the photographic lineup**; (3) **trial counsel performed ineffectively by failing to investigate the pre-trial lineup**; (4) Henderson's conviction violated the Double Jeopardy Clause; (5) **trial counsel performed ineffectively by failing to challenge the photographic lineup**; (6) the trial

---

[5]     Again, this application for leave to appeal is not included in the record, so it is not clear which claims Henderson presented.

court erroneously instructed the jury on flight; (7) Henderson was denied his right to testify; and (8) the trial court improperly sentenced him under the Michigan guidelines.  ECF No. 1.  The petition was held in abeyance so that Henderson could exhaust additional claims in the state court.  ECF No. 20.

Henderson then filed a second motion for relief from judgment in the state trial court raising the following claims: (9) his sentence was invalid because the habitual offender notice was not filed; (10) his trial counsel was ineffective for failing to object to a jurisdictional defect; (11) ineffective assistance of appellate counsel; and (12) the jury selection process was improper.  The trial court denied his motion because it was a successive motion for relief from judgment not based upon new evidence or a retroactive change in the law.  *People v. Henderson*, No. 03-2508 (Wayne County Cir. Ct. Sept. 22, 2009).

Henderson then filed another application for leave to appeal in the Michigan Court of Appeals raising those four claims, which the Court of Appeals dismissed because "an appeal from an order denying a successive motion for relief from judgment is prohibited by M.C.R. 6.502(G)."  *People v. Henderson*, No. 295674 (Mich. Ct. App. July 13, 2010).  Henderson did not, however, file an application or leave to appeal in the Michigan Supreme Court.  *See* Affidavit of Corbin R. Davis, Clerk, Michigan Supreme Court, 9/24/10 ("That I have searched the files and records of the Michigan Supreme Court and find that Michigan Court of Appeals docket number 295674 has not been appealed to this court.").

After the state trial court denied his successive motion for relief from judgment, Henderson returned to this Court and amended his habeas petition.  ECF No. 22.  As a result, Henderson's amended habeas petition asserted twelve claims of error:

1.  **Henderson was denied the effective assistance of appellate counsel where counsel failed to raise the following issues [2 and 3], and where counsel gave Mr. Henderson inaccurate advice.**

2.  **The prosecutor violated Henderson's right to a fair trial under the Fourteenth Amendment of the United States Constitution and Michigan Constitution 1963, Art. 1, § 17, by the soliciting of false evidence and testimony to obtain a conviction.**

3.  **Henderson was denied the effective assistance of trial counsel in violation of the Sixth Amendment where trial counsel (i) failed to investigate (ii) failed to uphold and protect Henderson's state and federal due process rights.**

4.  Henderson's convictions for both armed robbery and carjacking, where Defendant was charged with taking the complainant's car, and a cellular phone was later discovered missing from the car, violated the constitutional protection against double jeopardy.

5.  **Henderson was denied his Sixth Amendment right to the effective assistance of counsel, when his counsel failed to seek suppression of the photographic show up that was conducted with the complainant while he was in custody.**

6.  The trial counsel erred reversibly in giving a flight instruction where there was no evidence to support it.

7.  Under the circumstances of this case, Henderson's right to testify in his own defense and to present his defense were violated where he did not testify and he did not explicitly and personally waive his right to testify in open court.

8.  Henderson submits that the refusal of the trial court to sentence him near the bottom end of the guidelines range was an abuse of discretion and that he is entitled to appellate review of his sentence of 17 to 50 years in prison because it is disproportionate and an abuse of sentencing discretion.

9.  Henderson's sentence is invalid where the prosecution erroneously asserted to the court that it had filed a habitual offender fourth notice. Henderson was deprived of his Sixth and Fourteenth Amendment right provided by the United States Constitution and Michigan Constitution 1963, Art.1, Sec. 17 & 20.  Due process and the right to be informed of the charges.

10. Henderson received ineffective assistance of trial counsel, where counsel failed to object to a jurisdictional defect.

11.  Henderson's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when appellate counsel rendered ineffective assistance of Henderson's appeal by right, establishing "cause" for failure to raise on direct appeal.

12.  Henderson's due process rights under the United States Constitution were violated when the system utilized in Wayne County to select jurors systematically excluded African-Americans from Henderson's jury in violation of *Duren v. Missouri*, 439 U.S. 369 (1979).

On June 22, 2011, this Court issued an opinion and order denying Henderson's habeas corpus petition, denying a certificate of appealability, and denying Henderson leave to appeal in forma pauperis. ECF No. 19. The Court concluded that all of Henderson's claims were procedurally barred because he had not properly exhausted his claims in the Michigan state courts. Of particular relevance here, the Court noted that Henderson's "second, third, and fifth claims were presented for the first time in his motion for relief from judgment,"[6] ECF No. 29 at 10-11, and he had not properly presented those claims to the Michigan Court of Appeals because he did not file an application for leave to appeal within the applicable 12-month limitations period. *Id*. The Court further noted that Henderson had not exhausted claim 1 because he did not properly present it to the Michigan trial courts and did not seek leave to appeal to the Michigan Supreme Court. *Id*. Thus, the Court concluded, Henderson had not properly exhausted those claims because he had not completed one complete round of the state's established appellate review process.[7]

**C**

---

[6]      This statement contains a factual error. As noted above, Henderson presented claim 5—that trial counsel failed to challenge the photographic showup—to the Michigan trial court on direct review. Moreover, as explained below, the Michigan Court of Appeals addressed claim 3—that trial counsel should have moved for suppression of the photographic showup—even though Henderson did not present this claim on direct review.

[7]      The Court also concluded that Henderson had failed to properly exhaust claims 4, 6, 7, 8, 9, 10, 11, and 12 and denied those claims. The Sixth Circuit affirmed the denial of those claims, and therefore these claims will not be addressed extensively here.

After this Court dismissed Henderson's habeas petition in full, Henderson appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit affirmed the denial of claims 4, 6, 7 8, 9, 10, 11, and 12, but reversed this Court's denial of claims 1, 2, 3, and 5. The Sixth Circuit concluded that, although Henderson had not properly exhausted claims 1, 2, 3, and 5, he had shown cause and prejudice to excuse the default.[8] ECF No. 35 at 5, ECF No. 36 at 1-2. The Sixth Circuit therefore reversed and remanded with respect to claims 1, 2, 3, and 5.

Accordingly, Henderson has four claims of error ready for review:

1. **Henderson was denied the effective assistance of appellate counsel where counsel failed to raise the following issues [2 and 3], and where counsel gave Mr. Henderson inaccurate advice.**

2. **The prosecutor violated Mr. Henderson's right to a fair trial under the Fourteenth Amendment of the United States Constitution and Michigan Constitution 1963, Art. 1, § 17, by the soliciting of false evidence and testimony to obtain a conviction.**

3. **Henderson was denied the effective assistance of trial counsel in violation of the Sixth Amendment where trial counsel (i) failed to investigate (ii) failed to uphold and protect Henderson's state and federal due process rights.**

5. **Henderson was denied his Sixth Amendment right to the effective assistance of counsel, when his counsel failed to seek suppression of the photographic show up that was conducted with the complainant while he was in custody.**

On November 4, 2013, this Court appointed counsel to represent Henderson while his habeas petition is considered on remand. ECF No. 49.

### III

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

---

[8]   The doctrine of exhaustion of state judicial remedies is discretionary, not jurisdictional. *See Granberry v. Greer*, 481 U.S. 1671, 1673-74 (1987) ("We have already decided that the failure to exhaust state remedies does not deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application.").

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when a "state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**IV**

In his third and fifth assignments of error, Henderson contends that he received ineffective assistance of counsel when his trial counsel failed to investigate and challenge the photographic showup. Specifically, the third assignment of error contends that trial counsel was ineffective for failing to investigate the photographic showup as unduly suggestive. The fifth assignment, in contrast, contends that trial counsel was ineffective for failing to object to the use of a photographic showup rather than a live, in-person lineup.

The Court must first determine whether the heightened standards imposed by AEDPA govern each of Henderson's ineffective assistance of trial counsel claims. *See* 28 U.S.C. § 2254(d). These heightened standards apply to "any claim that was adjudicated on the merits in State Court proceedings." *Id*. In contrast, claims not "adjudicated on the merits" by the state court are entitled to de novo review by a federal habeas court, even where AEDPA otherwise applies. *See, e.g., Jackson v. Houk*, 687 F.3d 723, 731 (6th Cir. 2012); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). The Sixth Circuit has noted that "[I]n past cases, determining whether a claim was 'adjudicated on the merits' sometimes proved difficult . . . ." *Jackson v. Smith*, 745 F.3d 206, 209 (6th Cir. 2014).

## A

Henderson admits the fifth assignment of error—that trial counsel was ineffective for failing to object to the use of a photographic showup rather than an in-person lineup—was decided on the merits. Therefore, Henderson's fifth claim of error is subject to deferential review under AEDPA, and his petition can only be granted on this claim if he shows that the state court's determination was contrary to or involved an unreasonable application of federal law.

## i

Where, as here, § 2254(d)(1)'s heightened standard governs a federal court's review of a state conviction, the applicable substantive law is limited to federal law "clearly established" by the holdings of Supreme Court decisions. *Williams v. Taylor*, 529 U.S. at 412. Regarding ineffective assistance of counsel claims, "[t]here is no dispute that the clearly established federal law here is *Strickland v. Washington* [,466 U.S. 668 (1984)]." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011). In *Strickland*, the Supreme Court articulated a two-component test that must

- 11 -

be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction: "[f]irst, the defendant must show that counsel's performance was deficient" and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

For a defendant to satisfy the deficient performance component of the standard, he must show that "counsel's representation fell below the objective standard of reasonableness." *Id*. at 688. However, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court must apply a "strong presumption" that the counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689.

To establish the prejudice component, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694. This likelihood of a different result "must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

In application, the Supreme Court has noted that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The difficulty of this challenge is intensified when a petitioner is attempting to establish that a state court's application of *Strickland* was unreasonable under AEDPA. "The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Richter*, 131 S.Ct. at 788 (internal citations and quotation marks omitted).

The last reasoned opinion addressing Henderson's ineffective assistance of trial counsel claims is from the Wayne Circuit Court when it denied Henderson's first motion for relief from judgment. However, in denying Henderson's claims, the Wayne Circuit Court explicitly referred

to the analysis provided by the Michigan Court of Appeals on direct review, and that analysis therefore informs this Court's determination of whether the denial was an unreasonable application of law. Wayne Circuit at 2 ("Further, this issue was decided against defendant in a prior proceeding."). The Michigan Court of Appeals determined that Henderson could show neither objective unreasonableness nor prejudice resulting from his trial counsel's alleged failure to investigate and object to the photo show up.

**ii**

Here, the Michigan Court of Appeals determined that Henderson could not show that trial counsel acted unreasonably in failing to object to the use of a photo showup rather than an in-person show up. In Michigan, "[g]enerally, phographic showups are not permitted where the defendant is in custody and available for a live lineup"; however, such photographic showups are permissible "where there are an insufficient number of persons available with the defendant's physical characteristics." *Henderson*, 2005 WL 321004, at *3. The Michigan Court of Appeals concluded that a photographic showup was permissible in this case because officers could not find a sufficient number of persons with Henderson's characteristics:

> Here, Officer Mark Burke testified that he tried to compose a live lineup, but he could not locate five males of defendant's age, height, weight, and race. Officer Burke called around to different precincts but could not find any black males in custody that fit defendant's description. Officer Burke also testified that most of the people in custody were notably younger than defendant.

> Defendant argues that Officer Burke should have made more exhaustive efforts to locate suitable participants for a live lineup from a neighboring county or to set up a live lineup next day. However, the police are not required to make endless efforts to arrange a live lineup. Officer Burke's inability to compose a fair live lineup was due to the difficulty of finding suitable participants, and not his lack of effort, thus rendering the photographic lineup permissible.

*Henderson*, 2005 WL 321004, at * 3 (citations omitted). And because the photographic showup was permissible, Henderson's trial counsel was not ineffective for failing to object to it. *Id*.

- 13 -

Henderson contends that the Michigan Court of Appeals was unreasonable in holding that the photographic showup was permissible. He contends that "the police never indicated that they could not have conducted a live line-up the next day in a neighboring county . . . nor did the officers claim that time was of the essence. . . . There was no good and adequate reason a corporeal line-up could not have been conducted, as requested, that day or the day after." Supp. Brief (quoting R. 14-8 at 52).

Importantly, to the extent that Henderson is challenging the Michigan Court of Appeals' conclusion that the showup was permissible under state law, this is not a cognizable claim on federal habeas review. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Moreover, there is no constitutional right to a corporal line-up. *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002); *Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980) ("While we agree that a corporeal lineup is the most reliable identification procedure and for that reason the most preferable, the law is settled that defendant has no Constitutional right to a line-up."). Therefore, the fact that Henderson claims that the Michigan Court of Appeals erred in interpreting state law is not a basis for habeas relief.

In contrast, if Henderson is contending that his trial counsel was ineffective for failing to object to the use of the photographic lineup, this is a cognizable claim under the *Strickland* standard. But Henderson has not shown that his trial counsel was ineffective. As explained above, the Michigan Court of Appeals concluded that the photographic showup was permissible, and an attorney is not ineffective for failing to make frivolous motions: "Defendant failed to demonstrate that the photographic showup procedure was improper, and thus, a motion to challenge the admission of the photographic showup would have been unsuccessful."

- 14 -

*Henderson*, 2005 WL 321004, at * 3.  Indeed, Henderson has not offered evidence, other than mere speculation, that there were sufficient males of similar appearance in neighboring counties to conduct a live line-up.  Conclusory allegations of ineffective assistance of counsel, without evidentiary support, do not justify habeas relief.  *See Payne v. Smith*, 207 F. Supp. 2d at 650; *Hall v. Capello*, 2013 WL 4604137, at *7 (E.D. Mich. Aug. 29, 2013).  Accordingly, Henderson's fifth claim of error—that trial counsel was ineffective for failing to object to the use of a photographic showup—is denied.

### iii

In addition to affording deference to a state court's decision, a state court's decision on the merits also precludes a district court from conducting evidentiary hearings on that claim. *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).[9]  Thus, because Henderson's fifth claim of error was decided on the merits by the state courts, this Court is precluded from conducting an evidentiary hearing on those claims.  *Id*.

Although the Sixth Circuit has made clear that a district court may not conduct an evidentiary hearing when a claim has been decided on the merits in state court, Henderson nonetheless contends that an evidentiary hearing is appropriate on his fifth claim—that trial counsel was ineffective for failing to object to the use of the photographic showup rather than an in-person showup.  As noted above, Henderson admits that this claim was decided on the merits by the state courts.  However, he contends that, because the state court decision involved an unreasonable application of federal law, he is entitled to an evidentiary hearing.

---

[9]        Counsel for Henderson asserts that "[t]his dicta was wrong." Br. at 21 (citations omitted). Nonetheless, this Court is bound by Sixth Circuit precedent; it is also noteworthy that at least three other Sixth Circuit panels have cited this dicta favorably. *See Nicely v. Mills*, 521 F. App'x 398, 404 (6th Cir. 2013); *Lint v. Prelesnik*, 542 F. App'x 472, 483 (6th Cir. 2013); *Loza v. Mitchell*, 2014 WL 4403111, at *22 (6th Cir. Sept. 2, 2014).

To support his contention, Henderson emphasizes case law from the Seventh and Fifth Circuits, in which those courts held that an evidentiary hearing may be appropriate when a state court unreasonably applied federal law to the petitioner's case:

> We hold that *Pinholster*'s restriction does not bar the federal evidentiary hearing conducted in this case because the district court first concluded, solely on the basis of the state court record, that the state courts committed legal error, as required under 28 U.S.C. § 2254(d)(1), through the state courts' "unreasonable application of, clearly established Federal law." Thus, the evidentiary hearing was committed to the district court's discretion, subject to section 2254(e)(2).

*Smith v. Cain*, 708 F.3d 628, 631 (5th Cir. 2013). In other words, assuming for the moment that the Sixth Circuit would adopt the Fifth Circuit's reasoning, Henderson may be entitled to an evidentiary hearing if he can show, based solely on the state court record, that the Michigan state courts unreasonably applied federal law to his fifth claim of error.

Even if this Court were to adopt the Fifth Circuit's reasoning, as Henderson urges, he would still not be entitled to an evidentiary hearing. As set forth in more detail below, the Michigan state courts' decisions on the merits of this claim did not involve an unreasonable application of federal law. Thus, he has not met the requirements of 28 U.S.C. § 2254(d)(1) that that might have permitted an evidentiary hearing on that claim. Accordingly, because the Michigan courts decided Henderson's fifth claim of error on the merits, this Court is precluded from conducting an evidentiary hearing on that claim.

**B**

Although Henderson concedes that his fifth claim of error was decided on the merits, he contends that his third claim of error—that trial counsel was ineffective for failing to seek suppression of the overly suggestive lineup—was not decided on the merits. And, he continues, because it was not decided on the merits in state court, the claim should be reviewed de novo. Thus, to determine what level of review to afford Henderson's third claim of error, this Court

- 16 -

must first determine whether the Michigan state courts decided Henderson's third claim of error on the merits.

**i**

To determine whether the state courts decided a claim on the merits, this Court must "look through" the decisions of the Michigan state courts to the last reasoned state-court opinion discussing the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Although Henderson bifurcates his ineffective assistance of trial counsel claims in his habeas petition, the Wayne County Circuit court appears to have addressed the two as a single claim in its order denying Henderson's motion for post-conviction relief: "Defendant claims ineffective trial counsel based on counsel's failure to investigate the photographic showup." Order & Op. Massey Jones 2.

It is unclear from the text of the opinion, however, whether the Wayne County Circuit Court—the most recent state court opinion addressing the ineffective assistance of trial counsel claims—denied Henderson's claims on the merits or pursuant to a procedural bar. The opinion begins by stating that "[i]t is hereby ordered that the defendant's motion is denied pursuant to MCR 6.504(B)(2)," which permits denial of a motion "[i]f it plainly appears from the face of the material . . . that the defendant is not entitled to relief . . . ." This does not provide guidance, however, because denial pursuant to MCR 6.504(B)(2) may be due to a procedural bar or due to a lack of merit. *See Alexander v. Smith*, 311 F. App'x 875 (6th Cir. 2009) ("Although procedural reasons might provide a basis for dismissal under MCR 6.504(B)(2), by no means are they an exclusive grounds for doing so.")

The Wayne County Circuit Court opinion then goes on to specifically address Henderson's ineffective assistance of trial counsel claim:

> Defendant claims ineffective trial counsel based on counsel's failure to investigate the photographic showup. Once again, defendant cannot establish cause for

- 17 -

failing to raise this issue earlier.  Further, this issue was decided against defendant
in a prior proceeding.

Order & Op. at 2.  In other words, the second sentence appears to be denying Henderson's claim

on a procedural bar ("cannot establish cause"), while the third sentence appears to be denying

Henderson's claim on the merits ("decided against defendant in a prior proceeding").

The Sixth Circuit noted this apparent tension and determined that the basis of the Wayne

Circuit Court's denial was ambiguous:

> [A]lthough the trial court stated that "Defendant cannot establish cause for failure
> to present these issues in earlier proceedings," it proceeded to address the merits
> of the claims.  The trial court quoted the court of appeals decision on Henderson's
> direct appeal, which held that "the facts adduced at trial demonstrate that an
> independent basis exist [sic] for the identification and a motion to challenge the
> admission of the photographic show up would have been unsuccessful."  The trial
> court went on to state that "[a]ppellate counsel cannot be ineffective for failing to
> raise these issues, which were without merit."  In light of the trial court's failure
> to "clearly and expressly" invoke Rule 6.508(D), and its statements on the merits
> of Henderson's claims, *we hold that the decision is ambiguous as to whether
> Henderson's claims were found to be procedurally defaulted or denied on the
> merits.*  Since the trial court's decision does not show "unambiguous state-court
> reliance on a procedural default," we cannot say that the state court actually
> enforced a procedural rule in denying Henderson's claim."

Op. & Order 10-11 (emphasis added).  Thus, the Wayne Circuit Court's order is ambiguous as to

whether it denied Henderson's ineffective assistance of trial counsel claims due to a procedural

bar or on the merits.

Where, as here, it is ambiguous whether the state court denied a claim due to a procedural

bar or on the merits, a court must presume that the trial court adjudicated the petitioner's claims

on the merits.  *Richter*, 131 S. Ct. at 784-85; *see also Mills v. Lafler*, 2011 WL 2600993, at *3

(E.D. Mich. June 30, 2011) (applying *Richter* presumption to a Michigan court decision pursuant

to MCR 6.504(B)(2).  Accordingly, given the *Richter* presumption, the Wayne Circuit Court

- 18 -

denied Henderson's claim that trial counsel was ineffective for failing to object to the suggestive lineup on the merits, and that decision is entitled to heightened deference under AEDPA.

Although this Court must presume that the Wayne Circuit Court denied Henderson's claim that he received ineffective assistance of trial counsel for failure to investigate the photographic showup on the merits, Henderson nonetheless contends that this claim is not entitled to AEDPA deference.   In other words, Henderson maintains that his ineffective assistance for failure to investigate the photo-lineup claim was not adjudicated on the merits and therefore must be reviewed de novo.   To support this proposition, Henderson contends that the Michigan courts' consideration of the claim that the showup was overly suggestive involved only state law—not federal law: "The basis of that ineffective assistance of counsel claim arose under Michigan law, not federal law.   As such, the state court never assessed the reliability of Ms. Young's identification under the applicable federal law as it applies to suggestive identification procedures."   Supp. Brief at 19 n.3.

The determination of whether a claim was decided on the merits can be especially difficult where, as here, the state court relies solely upon state court authority in denying a petitioner's claims.   However, *Richter*'s presumption that a decision was on the merits applies even where a state court confined its analysis to state-law authorities.   *Jackson v. Smith*, 745 F.3d at 210 (citing *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011) (holding that the state court's exclusive focus on Ohio's speedy-trial provisions in rejecting a federal speedy-trial claim failed to rebut the presumption of a merits adjudication).

Here, the Michigan Court of Appeals denied Henderson's ineffective assistance claim because he had not shown that the underlying claim—that the photographic showup was overly suggestive—had merit. In examining both the ineffective assistance claim and the merits of the

underlying claim, the Michigan Court of Appeals cited mainly state law.  *See* 2005 WL 321004, at *3 (citing *People v. Kurylczyk*, 505 N.W.2d 528 (Mich. 1993)).  However, the Michigan standards for both the ineffective assistance claim and the underlying claim are congruent with federal law.

For example, with regards to the underlying claim that the photographic showup was overly suggestive, the Michigan standard for making this determination is identical to the federal standard articulated by the United States Supreme Court.  *See People v. Kurylczyk*, 505 N.W.2d at 535-36 (quoting the United States Supreme Court's *Biggers*[10] reliability factors); *see also People v. Gray*, 577 N.W.2d 92, 97 n.11 (Mich. 1998) ("[W]e adopt the use of the [*Biggers*] factors in this opinion.")

In addition, in determining whether Henderson's trial counsel was ineffective with respect to the reliability of the showup, the Michigan state courts relied on the holding from the United States Supreme Court in *Bell v. Cone*, 535 U.S. 685 (2002), which articulates the federal standard for ineffective assistance of counsel.  2005 WL 321004, at *2 ("This Court will not reverse a conviction based on ineffective assistance of counsel unless the defendant establishes that counsel's performance was below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, *Bell v. Cone*, 535 U.S. 685, 695 . . . .").  Moreover, the Michigan courts use the standard set forth in *Strickland* to determine ineffective assistance of counsel claim under Michigan law: "The benchmark case describing the standard for claims of actual ineffective assistance of counsel in Michigan is *People v. Pickens*, 521 N.W.2d 797, which held that the right to counsel under the Michigan Constitution does not justify a more restrictive standard than that applied under the United States Constitution and

---

[10]     *See Neil v. Biggers*, 409 U.S. 188 (1972).

adopted the Supreme Court's test in *Strickland*." *People v. Mitchell*, 560 N.W.2d 600, 606 (Mich. 1997).

Where, as here, "the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).  Thus, because the United States Supreme Court's standard for ineffective assistance and the Michigan standard for ineffective assistance are coextensive, "the state court necessarily resolved the federal claim, despite not expressly saying so." *Jackson v. Smith*, 745 F.3d at 210, (citing *Johnson*, 133 S.Ct. at 1098 ("Regardless of whether a California court would consider Williams' [state] and Sixth Amendment claims to be perfectly coextensive, the fact that these claims are so similar makes it unlikely that the California Court of Appeal decided one while overlooking the other.")).  This is also true of the underlying claim that the photographic showup was overly suggestive: Michigan uses the same standard as the federal courts, and therefore the state court necessarily resolved the federal claim.

Thus, although the Michigan Court of Appeals decision cited mainly state law in denying Henderson's claim for ineffective assistance of counsel claim for failing to investigate and object to the show up, by incorporating the federal *Strickland* and *Biggers* standards into its state standards, the Michigan courts effectively resolved the federal ineffective assistance claim, too. Accordingly, the Michigan Court of Appeals adjudicated Henderson's federal ineffective assistance of counsel for failure to object to the photographic showup as unduly suggestive on the merits, and this Court must review the decision under AEDPA's heightened standard.[11]

---

[11]     In his supplemental brief, Henderson contends that he is entitled to an evidentiary hearing on this claim pursuant to 28 U.S.C. § 2254(e), which governs the ability of federal habeas courts to take new evidence in an evidentiary hearing.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01 (6th Cir. 2011).  But § 2254(e) only applies if § 2254(d) is inapplicable; that is, Henderson may be entitled to an evidentiary hearing (pursuant to § 2254(e)) only

Moreover, as noted above, because Henderson's third claim of error was decided on the merits, this Court is precluded from conducting an evidentiary hearing on the claim.

**ii**

The Michigan Court of Appeals determined that Henderson could not show that trial counsel acted unreasonably in failing to object to the photo showup as unnecessarily suggestive. The Michigan Court of Appeals concluded that Henderson could not show prejudice from the alleged failure to object because the eyewitness had an independent basis for identifying the defendant in court:

> Young testified that she viewed defendant's face from approximately one foot away and there was nothing blocking her view. Although it was nighttime, there were lights illuminating the gas station where the incident occurred. Young's description of defendant exactly fit defendant when he was apprehended. She was thoroughly cross-examined with regard to the conditions and circumstances under which she viewed defendant, and thus, any reason to question the accuracy of her identification was before the court. The evidence shows that Young immediately identified defendant at the photographic showup. Further, other evidence shows that defendant adduced at trial demonstrate that an independent basis existed for the identification and a motion to challenge the in-court identification would have been unsuccessful.

*Henderson*, 2005 WL 321004, at *3.[12] Thus, because Ms. Young's identification had sufficient indicia of reliability, the photographic showup was not impermissibly suggestive. And because the photographic showup was permissible, the Michigan Court of Appeals determined that Henderson could not show prejudice. *People v. Henderson*, 2005 Wl 321004 at *4 ("Since Defendant has failed to establish that there is a reasonable probability that, but for the alleged

---

if the state courts did not decide his claims on the merits (as set forth in § 2254(d)). *Id*. ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief. For example, not all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims 'adjudicated on the merits in State court proceedings.' At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court."). Here, the Michigan state courts decided Henderson's claims on the merits, and therefore § 2254(e) is inapplicable.

[12]     Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court shall be presumed correct and the applicant shall have the burden of rebutting the presumption by clear and convincing evidence. *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

error in defense counsel's failure to object to the admission of the photographic showup and Young's in-court identification, the result of the proceedings would have been different, his claim of ineffective assistance of counsel also fails.") (citing *Bell* at 695).

To determine whether the Michigan courts unreasonably applied Supreme Court precedent in denying Henderson's ineffective assistance of trial counsel claim, "the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 789.

Here, the Michigan Court of Appeals denied Henderson's ineffective assistance claim because he could not show that the underlying claim was meritorious. Therefore, this Court must examine whether the underlying claim—that the photographic showup was overly suggestive— before turning to the alleged ineffectiveness of trial counsel.

The United States Supreme Court has held that an identification violates a defendant's right to due process when the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification.  *Howard v. Bourchard*, 405 F.3d 459, 469 (6th Cir. 2005) (citing *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)).  However, "reliability is the linchpin in determining the admissibility of identification testimony."  *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977).  Thus, the analysis of a suggestive identification claim is two-part: (1) the court first assesses whether the identification was unnecessarily suggestive; and if so (2) the court assesses whether the identification was nevertheless reliable under the totality of the circumstances.  *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005).  The petitioner

- 23 -

bears the burden of showing that the identification was impermissibly suggestive. *Howard*, 405 F.3d at 469 (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992)).

a

First, Henderson must show that the photographic showup was impermissibly suggestive. "Unnecessary suggestiveness generally depends upon whether the witness's attention was directed to a suspect because of police conduct." *Howard*, 405 F.3d at 470 (quotations omitted). A court must look to "the effects of the circumstances of the pretrial identification, not whether law enforcement officers intended to prejudice the defendant." *Howard*, 405 F.3d at 470 (citing *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1985)).

In its decision, the Michigan Court of Appeals determined that the photographic showup was not overly suggestive: "[N]othing in the record shows that photographic showup was impermissibly suggestive. . . . The photo array was prepared with six photographs that were similar to defendant's physical characteristics." 2005 WL 321004, at *3. Indeed, the record reflects that police were concerned with finding men who looked similar to Henderson:

| | |
|---|---|
| Q: | When you say resemble, what features, specifically, are you looking for that you want some similarity between? |
| Officer Burke: | Age, height, weight, and race. |
| Q: | What was your goal in picking out those pictures [for the photographic showup]? |
| Officer Burke: | Just looking for similar facial qualities, age, and race. |

Transcript 6/11/03 228, 230.

Here, Henderson asserts that, contrary the Michigan Court of Appeals' conclusion, the photographic showup was impermissibly suggestive because "only two or three of the six individuals appear to be wearing black jackets of any sort, and Mr. Henderson's coat features a

- 24 -

distinctive large collar that is not present in any of the other photographs."  Supp. Br. at 17 (Exhibit A).  That Henderson was the only suspect wearing a black jacket with a large collar is especially important because Ms. Young described her attacker to police as wearing a "black jacket."  (R.14-5 at 166).[13]

This evidence is not persuasive.  Ms. Young did indeed tell police that her attacker was wearing a "black jacket," a "nylon type winter jacket" that was "[a]bout to his knees, or a little— like three-quarters length."[14]   (R. 14-5 at 166).   However, when police put together the photographic showup, Henderson admits that at least two—maybe three—of the six individuals are wearing black jackets.  Moreover, although Henderson is the only one with a "distinctive collar", Ms. Young never told police that her attacker's coat had a distinctive collar:

> Q:              What kind of description were you able to get from [Ms. Young] to pass on to other officers?
>
> Officer Moss:  She gave us a description of a black male, possibly mid-thirties. She said he had facial hair, like, a possible beard. She said he had on dark, dark pants, black coat, and a skull cap. And that he was armed with a knife that had serrated edges.

6/11/03 Transcript at 185. And because Ms. Young did not initially say that her attacker had a jacket with a distinctive collar, the fact that he was the only man in the photographic showup with a distinctive collar does not make the show up overly suggestive.  *Howard*, 405 F.3d at 471 ("[U]nless the witness described the distinctive characteristic to the police beforehand, that characteristic is not a basis for finding a lineup unduly suggestive.").

---

[13]      Henderson also argues that although the black coat was in the back seat of the car, "police gave the coat to Mr. Henderson, and *presumably* instructed him to wear it, before they took a photograph for the lineup."  Br. at 18 (emphasis added).  But Henderson does not provide any evidentiary support for the notion that police *may have* forced Henderson to wear the coat; indeed, Henderson does not even argue that the police actually did instruct him to wear it—just that *presumably* they did.  Certainly, if anyone was to know whether Henderson was forced to wear the jacket, it would be Henderson himself.

[14]      It is immaterial that Henderson was wearing a ¾ length jacket in his photo, because the showup used only photos of the individuals from the shoulders up.  Therefore, it would not have been possible for Ms. Young to know that Henderson was the only individual wearing a ¾ length jacket in the photographic show up.

However, this situation is different from that in *Howard*, because although Ms. Young did not describe her attacker as wearing a coat with a distinctive collar, Henderson was in fact wearing the same coat as her attacker wore. That is, in the photographic lineup, Henderson was wearing the black jacket the carjacker wore, which was found in the backseat of the stolen vehicle. This is important, because there is the potential that Ms. Young recognized the distinctive collar rather than Henderson's face. Thus, there is a possibility that the Michigan Court of Appeals unreasonably determined that the photographic show up was not overly suggestive. However, as explained below, because the photographic show up was nevertheless reliable under the totality of the circumstances, the photographic show up was not unconstitutionally suggestive.

**b**

Assuming for purposes of argument that the photo show up was suggestive, the next step is to determine whether the identification was nevertheless reliable under the totality of the circumstances. In determining reliability, a court must consider the totality of the circumstances, including such factors as:

> (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.

*Howard*, 405 F.3d at 482 (citing *Manson*, 432 U.S. at 114 and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). A court must weigh these factors against any "corrupting effect of the suggestive identification." *Manson*, 432 U.S. at 114.

The Michigan Court of Appeals addressed each of these five factors in determining whether the photographic showup was nevertheless reliable.[15]  In habeas proceedings, a state court's factual findings are entitled to a presumption of correctness, and Henderson bears the burden of producing "clear and convincing" evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1).  And when assessing witness credibility, a federal court's review becomes even more deferential, as federal courts "are in no position to second guess credibility findings made by the trier-of-fact."  *Grayer v. McKee*, 149 F. App'x 435, 439 (6th Cir. 2005) (citing *Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000)).

The first factor concerns the opportunity of the witness to view the defendant. Here, Ms. Young testified that she viewed Henderson's face from approximately one foot away and there was nothing blocking her view.  *Henderson*, 2005 WL 321004, at *3; (Transcript 6/11/03 164, 165).  And "[a]lthough it was nighttime, there were lights illuminating the gas station where the incident occurred."  *Id*. (Transcript 6/22/03 165).  These facts weigh in favor of reliability.  *See Hampton v. Ludwick*, 2010 WL 4683909, at *6 (E.D. Mich. Nov. 10, 2010) ("The victim testified that the area where he was robbed was illuminated by a street light, a porch light, and the interior light of his car. Petitioner's face was within six or seven inches of the victim's face during the robbery . . . . These factors all support a finding that an independent basis existed for the victim's in-court identification of petitioner.").

The second factor concerns the witness's degree of attention.  To analyze the sufficiency of an eyewitness's degree of attention, a court generally examines the circumstances surrounding the witness's encounter.  *United States v. Thomas*, 116 F. App'x 727, 736 (6th Cir. 2004) *vacated on other grounds*, 543 U.S. 1116 (2005) (remanding in light of *United States v. Booker*,

---

[15]     Although the Michigan Court of Appeals cited to Michigan caselaw in its analysis, Michigan courts use the standard initially articulated by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972).

543 U.S. 220 (2005)). An identification is more reliable when a witness was able to view the assailant with a "heightened degree of attention, as compared with disinterested bystanders or casual observers." *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (quotations omitted)). "Generally, we place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard*, 405 F.3d at 473 (citing *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention where victim spoke with robber and studied his features while looking for an opportunity to escape); *Crozier*, 259 F.3d at 511 (finding heightened degree of attention where robber confronted witnesses with a gun)).

In this case, the eyewitness was the victim herself. The fact that she was the victim of the crime invites a heightened degree of attention, and suggests that she was extremely attentive. *Hampton*, 2010 WL 4683909, at *6 ("In light of the fact that the victim was being robbed at gunpoint, it was not unreasonable to conclude that the victim paid a high degree of attention to his assailant.").

The third factor concerns the accuracy of the witness's prior description. Here, "Young's description of defendant exactly fit defendant when he was apprehended." *Henderson*, 2005 WL 321004, at *3. An accurate prior description favors reliability. Indeed, Henderson has not proffered any evidence of discrepancies between Ms. Young's description of the carjacker and himself. *See United States v. McComb*, 249 F. App'x 429, 441 (6th Cir. 2007) ("McComb does not argue on appeal, nor did he argue before the district judge at the suppression hearing, that [Witness's] description was mistaken"). Therefore, this factor weighs in favor of reliability.

The fourth factor concerns the level of certainty shown by the witness. Here, "[t]he evidence shows that Young immediately identified defendant at the photographic showup." *Id.*

- 28 -

Ms. Young claims that it took her "[j]ust a couple of seconds to" pick Henderson out of the showup. Transcript 6/11/03 171. The Michigan Court of Appeals also noted that Young "was thoroughly cross-examined with regard to the conditions and circumstances under which she viewed defendant, and thus, any reason to question the accuracy of her identification was before the court." *Id*. When, as here, a witness immediately and unequivocally identifies a defendant in a lineup, this factor weighs in favor of reliability. *Howard*, 405 F.3d at 473 ("[Witness] immediately picked Howard out of the lineup. In court, he testified without equivocation that Howard was the killer."); *Meyer*, 359 F.3d at 826 ("[Witness] identified Meyer quickly and confidently" suggesting reliability of the identification.).

The final factor is the length of time between the initial observation and the identification. Here, Ms. Young was attacked on February 6, 2003, and her identification of Henderson in the photographic show up occurred on February 07, 2003. (Transcript 6/11/03 at 170). Thus, there was only a delay of about one day between the initial observation and the identification. Such a short delay certainly does not discredit the reliability of Ms. Young's identification. *See Donaldson v. Palmer*, 2011 WL 1135517, at *17 (E.D. Mich. Mar. 25, 2011) *aff'd sub nom. Donaldson v. Booker*, 505 F. App'x 488 (6th Cir. 2012) (Concluding that a witness identification was reliable due in part to the fact that "[t]he length of time between the crime and the confrontation was a matter of one day at most."); *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987) ("A three to four-month delay between the crime and the identification does not render the identification inherently unreliable.").

Under the totality of the circumstances, the state court's conclusion that Ms. Young's identification was sufficiently reliable to overcome any suggestive procedure was reasonable. All five *Biggers* factors weigh in favor of reliability: Ms. Young was about a foot away from the

carjacker at the time of the crime.  Nothing shielded the carjacker's features.  As the victim of the carjacking, Ms. Young was highly alert to the crime.  She unequivocally picked Henderson out of the photographic showup on February 7, 2003.  Thus, her identification was reliable.[16]

The Michigan Court of Appeal's determination that the photographic showup was not unconstitutionally suggestive is neither "contrary to" nor an "unreasonable application" of federal law.  And because the photographic show up was not unconstitutionally suggestive, trial counsel was not ineffective for failing to object to it.  Accordingly, Henderson's claim that trial counsel was ineffective for failing to object to the overly suggestive photographic showup will be denied.

c

Henderson also claims that the overly suggestive photographic lineup tainted Ms. Young's later in-court identification of him.  Thus, he contends, his trial counsel was also ineffective for failing to suppress any in-court identification.

At trial, Ms. Young identified Henderson as the man who attacked her.  Transcript 6/11/03 165. Although defense counsel did not object to the identification, he was able to cross-examine Ms. Young regarding her ability to adequately view the man who attacked her:[17]

---

[16]       In addition to considering the reliability of the actual identification, courts may also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless.  *Robertson v. Abramajtys*, 144 F. Supp.2d 829, 848 (E.D. Mich. 2001) (citing *United States v. Aigbevbolle*, 772 F.2d 652, 653 (10th Cir. 1985) and *United States v. Archibald*, 734 F.2d 938, 942-43 (2d Cir. 1984)).  Here, Henderson was arrested less than a day later by police while speeding in the victim's stolen car, which also contained the steak knife used in the carjacking.  In addition, he admitted that the car was Ms. Young's.  6/11/03 Tr. at 206.  Therefore, Henderson has not shown the substantial likelihood of irreparable misidentification.  *See Hampton*, 2010 WL 4683909, at *6 (Petition did not show a substantial likelihood of irreparable misidentification where "petitioner was arrested two days later by police while walking towards the [carjacking] victim's car . . . .").

[17]       In its opinion and order remanding the claims, the Sixth Circuit stated that "[a]t trial, Henderson's counsel neither challenged the admission of the photographic lineup, nor testimony regarding it." Op. & Order at 2.  Although it is true that defense counsel did not raise an objection, he certainly challenged the testimony by cross-examining Ms. Young about her identification of Henderson.

- 30 -

Defense Counsel:    Now, when the police got there, you gave a description; is that correct?

Ms. Young:          Yes.

Defense Counsel:    And you stated that this was a black man in his mid-thirties?

Ms. Young:          Yes.

Defense Counsel:    You stated that he had on dark clothing?

Ms. Young:          Yes.

Defense Counsel:    And possible beard, but you weren't sure?

Ms. Young:          Yes.

Defense Counsel:    And you stated he had a skull cap; is that correct?

Ms. Young:          Yes.

Defense Counsel:    Now when you went to go view these pictures, did any of the police officers show you a skull cap?

Ms. Young:          No.

Defense Counsel:    Did they show you a black three-quarter coat?

Ms. Young:          No.

Defense Counsel:    Did they show you any of the clothing that this person may or may not have been wearing?

Ms. Young:          No.

Defense Counsel:    So, you don't know what Mr. Henderson was wearing when he was arrested at Michigan State?

Ms. Young:          No. . . .

Defense Counsel:    And [the carjacking] happened a total of how many minutes?

Ms. Young:          Within just a few minutes. I don't know how many minutes it was, exactly.

| Defense Counsel: | What was the lighting like at this place? |
| Ms. Young: | Fair. |
| Defense Counsel: | You said, fair. What do you mean by that? |
| Ms. Young: | It wasn't real bright like this, but you could see. I mean, it wasn't lit up like this. |

Transcript at 174-75, 179. Thus, defense counsel extensively cross-examined Ms. Young regarding her ability to see her attacker.

Henderson now claims that his counsel should have moved for suppression of the identification rather than cross-examining Ms. Young. A trial counsel's failure to move to suppress an allegedly unreliable in-court identification is not ineffective assistance, absent a reasonable probability that this motion would have resulted in a decision to exclude the testimony. *Millender v. Adams*, 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002) (citing *White v. Helling*, 194 F.3d 937, 941-42 (8th Cir. 1999)).

Here, it was not a reasonable probability that a motion to suppress would have resulted in exclusion of Ms. Young's testimony. As explained above, the photographic showup was not impermissibly suggestive, and Ms. Young's testimony had numerous indicia of reliability. Therefore, it was not reasonably probable that her testimony would have been excluded, and Henderson's counsel was not ineffective for failing to make a motion to suppress. Moreover, the decision to attack the credibility of Ms. Young's identification of Henderson through crossexamination, as opposed to bringing a motion to suppress the identification, was a reasonable trial strategy. *Berry v. Rivard*, 2013 WL 6859251, at *11 (E.D. Mich. Dec. 30, 2013) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."); *see also Millender v. Adams*, 187 F. Supp. 2d at 868

(same); *Monroe v. Smith*, 197 F. Supp. 2d 753, 760 (E.D. Mich. 2001) (same).  Accordingly, Henderson is not entitled to habeas relief on his third claim of error: trial counsel was ineffective for failing to challenge the photographic showup as overly suggestive.

## C

A deferential review of the Michigan courts' denial of Henderson's ineffective assistance claims reveals that the denials were not an unreasonable application of clearly established federal law.  Given the evidence before the courts at the time of their decisions, it was not unreasonable for the state courts to conclude that Henderson's ineffective assistance of counsel claims lacked merit.  Accordingly, Henderson's third and fifth claims of error will be denied.

## V

Henderson's second claim of error states that the prosecution elicited false testimony during his trial regarding the photographic showup held on February 7, 2002.  Specifically, Henderson claims that, even though his trial attorney Mr. Corr was not present at the photographic showup, law enforcement officers testified that Mr. Corr had been present.  As the Wayne Circuit Court explained:

> Defendant attempts to claim that the prosecutor used false evidence to gain the conviction.  Defendant claims that the testimony of officer Burke that the photographic line up was observed by Timothy Corr is false.  In order to establish this claim defendant points to Exhibit A where Timothy R. Corr, Esq., wrote that the line-up was on 2/24/03 not 2/8/03.

Wayne Court 2.  In other words, Henderson claims that his attorney was not present at the February 7, 2002 showup in which Ms. Young identified him as her attacker, and that law enforcement's assertions to the contrary on the witness stand violated his constitutional rights.

The first time that Henderson presented this claim in any form was to the Wayne Circuit Court in his post-conviction motion for relief from judgment.  The Sixth Circuit determined that,

similar to Henderson's previous claims, whether the state court denied this claim on the merits or due to a procedural bar was ambiguous.[18]   Op. & Order 11 ("we hold that the decision is ambiguous as to whether Henderson's claims were found to be procedurally defaulted or denied on the merits.").   Accordingly, given the ambiguity, this Court must presume that the state courts denied the solicitation of false testimony claim on the merits and this denial is entitled to heightened deference under AEDPA.   *Richter*, 131 S. Ct. at 784-85. Moreover, because the state courts decided the claim of error on the merits, this Court is precluded from conducting an evidentiary hearing. *Ballinger*, 709 F.3d at 561.

## A

---

[18]      Indeed, it does not appear that Henderson presented the solicitation of false testimony claim as an independent claim during his post-conviction proceedings in state court.  Instead, in his first motion for relief from judgment, he claimed only that his appellate counsel was ineffective for failing to object to the false testimony during his direct appeals in state court.

Because Henderson was raising the solicitation claim as part of an ineffective assistance of appellate counsel claim, the Wayne Circuit Court addressed only the ineffective assistance claim.  The Wayne Circuit Court implies that this ineffective assistance claim would be denied because the false testimony claim was not raised on direct appeal.  That is, the Wayne Circuit Court repeatedly notes that Henderson did not show "cause", implying that Henderson needed to overcome a procedural bar to have his ineffective assistance claim addressed on the merits:

> Defendant *fail to established cause* because Mr. Corr's letter was dated February 24, 2004. Appellate counsel was aware of this evidence.  Appellate counsel told the defendant if he wanted to raise the issue he could file a Supplemental Brief.   (See Appellate Counsel's letter dated October 22, 2004).  Thus, defendant *cannot establish cause* for failing to raise this issue in prior proceedings. [sic throughout]

Wayne Court 2 (emphasis added).  Thus, it appears that the court determined that Henderson could not overcome the procedural hurdle—showing cause to excuse the failure to present the false solicitation claim on direct appeal—and therefore it did not decide the ineffective assistance claim on the merits.  In other words, a review by this Court indicates that Henderson's claim for ineffective assistance of counsel for failing to object to the false testimony was denied by the state court due to a procedural bar, and thus the denial is subject to de novo review.

Nevertheless, the Sixth Circuit concluded that it was unclear whether this second claim of error was denied on the merits or due to a procedural rule: "[W]e hold that the [Wayne Circuit Court] decision is ambiguous as to whether Henderson's claims were found to be procedurally defaulted or denied on the merits."  Op. & Order at 11. And this Court is bound by the appellate court's holding pursuant to the law of the case doctrine.  *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997) ("It is clear that when a case has been remanded by an appellate court, the trial court is bound to 'proceed in accordance with the mandate and law of the case as established by the appellate court.'") (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973)).

Here, the Wayne Circuit Court did not provide an explanation for its denial of Henderson's solicitation of false testimony claim.[19]  Where, as here, the state court did not explain the reasons for its decision, "the habeas petitioner's burden still must be met by showing that there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. In his habeas petition, Henderson does not attempt to show—for reasons detailed below—that there was no reasonable basis for the state court to deny relief: "it does not appear possible to prove the factual basis for this claim, and counsel for Mr. Henderson will not pursue this issue or seek an evidentiary hearing on its basis." Br. at 15 (noting that Henderson had not formally waived or abandoned this claim).  Therefore, Henderson has not met his burden, and this claim for relief will be denied.

**B**

In the alternative, assuming for purposes of argument that the claim was denied for procedural reasons, Henderson would still not be entitled to relief.[20]  If, as Henderson asserts, his second claim of error was not decided on the merits, this Court must review the claim de novo. As part of de novo review, this Court is authorized to consider and develop the factual record related to Henderson's second claim of error.

After this Court appointed counsel to represent Henderson on his habeas petition, counsel met with Mr. Corr regarding the February 7, 2002 photographic showup.  As Henderson's counsel explains:

> After a review of his records, Mr. Corr confirmed that on February 7, 2002, he *was* present for the photographic lineup in which Jessie Young identified Mr.

---

[19]     To be clear, the Wayne Circuit Court did address whether trial counsel was ineffective for failing to raise the solicitation of false testimony claim, but the false testimony claim was not addressed as an independent claim.

[20]     *See* footnote 17, *supra*.

> Henderson, and that any suggestion to the contrary in his 2004 letter was wrong.
> Mr. Corr expressed his regret for any confusion caused by his 2004 letter.

Pet.'s Supp. Brief at 6.  Thus, the recently revealed fact is that Mr. Corr admits to being present

at the February 7, 2002 photographic showup.  Because Henderson's trial counsel was present

during the showup, law enforcement's testimony to that effect at trial could not have been "false"

as Henderson claims in his second claim of error.  Accordingly, even under de novo review,

Henderson's second claim of error would be denied.

## VI

In Henderson's final claim of error, he alleges that his appellate counsel was ineffective

for failing to raise the above issues—the challenge to the photographic showup (claims 3) and

the solicitation of false testimony (claim 2)—on appeal.  The Sixth Circuit held that this claim

was not procedurally defaulted,[21] and therefore this Court will review the claim de novo.

The Supreme Court has held that "the Constitution guarantees criminal defendants only a

fair trial and a competent attorney.  It does not insure that defense counsel will recognize and

raise every conceivable constitutional claim."  *Engle v. Isaac*, 456 U.S. 107 (1982).

Accordingly, ineffective assistance of appellate counsel claims are governed by the same

*Strickland* standard as claims of ineffective assistance of trial counsel.  *See Smith v. Robbins*, 528

U.S. 259, 285 (2000).  Thus, Henderson must show that his appellate counsel's performance was

deficient and that he was prejudiced as a result.  *Strickland*, 466 U.S. at 687.

As explained above, each of Henderson's claims of error were without merit.  First,

regarding Henderson's third claim of error, the Michigan courts determined that the

photographic showup was not overly suggestive and that Henderson "failed to demonstrate that

---

[21]   "Thus, we hold Henderson's claim of ineffective assistance of appellate counsel in the direct appeal is not procedurally defaulted for failure to present it on direct appeal because to do so was manifestly impossible." Op. & Order 9.

the photographic showup procedure was improper." *Henderson*, 2005 WL 321004, at *3. Second, regarding Henderson's second claim of error, Henderson has not met his burden in showing that there was no reasonable basis for the state court's conclusion that his solicitation of false testimony claim is without merit.

Because these claims were without merit, appellate counsel cannot be found to be ineffective for "failing to raise an issue that lacks merit." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Furthermore, the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 249 F.3d 340, 348-49 (6th Cir. 2003). Accordingly, Henderson's first claim of error will be denied.

## VII

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## VIII

Accordingly, it is **ORDERED** that Henderson's petition for habeas corpus (ECF No. 1, 22) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to appeal in forma pauperis is **DENIED** because any appeal would not be taken in good faith.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 27, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 27, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---